UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUVENAL GARCIA GONZALEZ, <br><br> Petitioner, <br><br> v. <br><br> ERIK BONNAR, et al., <br><br> Respondents. | Case No.18-cv-05321-JSC <br><br> **ORDER RE: TEMPORARY RESTRAINING ORDER** <br><br> Re: Dkt. No. 10 |

Petitioner Juvenal Garcia Gonzalez is a noncitizen from Mexico who is currently in Immigration and Customs Enforcement ("ICE") custody at the Yuba County Jail pending the conclusion of his removal proceedings. On August 29, 2018, he filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking an order requiring his release from custody or directing the Respondents to schedule a detention hearing before an Immigration Judge. (Dkt. No. 1.) Two weeks later, Petitioner filed the now pending motion for a temporary restraining order seeking the same relief. (Dkt. No. 10.) Having considered the parties' briefs and having had the benefit of oral argument on September 20, 2018, the Court DENIES the motion for a temporary restraining order.[1] Petitioner has failed to establish that his detention is unconstitutional.

## BACKGROUND

Petitioner was born in Mexico in 1963 and has lived in the United States since he was a teenager. (Dkt. No. 10-3 at ¶ 3.) In 1991, he adjusted his status to that of a permanent resident. (*Id*.) He has six United States citizen children and eleven United States citizen grandchildren. (*Id*. at ¶ 7.)

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos.8, 11, 12.)

In 2016, Petitioner pled guilty to a violation of California Penal Code § 245(a)(1), assault with a deadly weapon, and was sentenced to three years in prison; although he was released after 15 months due to good behavior. (*Id*. at ¶¶ 5-6; Dkt. No. 10-2 at ¶ 7.) Shortly after Petitioner's release, he was picked up by ICE and he has been detained at the Yuba County Jail since December 28, 2017. (Dkt. No. 10-3 at ¶ 2.) His Notice to Appear charges him with removability under INA § 237(a)(2)(A)(iii) based on his conviction of an aggravated felony for which the term of imprisonment was at least one year. (Dkt. No. 10-2 at 7.[2])

Petitioner appeared before an Immigration Judge for his first hearing in January 2018. (Dkt. No. 10-3 at ¶ 8.) That hearing, and a hearing the following month, were continued at Petitioner's request to allow him to find counsel. (Dkt. No. 15 at ¶¶ 9-10.) In March, Petitioner appeared a third time before an Immigration Judge, admitted the allegations including the charge of removability, but sought to apply for relief from removal in the form of readjustment of status through his daughter. (*Id.* at ¶ 11.) The case was thus continued to allow his daughter to submit a visa petition on his behalf. (*Id*.) The following month, Petitioner again appeared but was advised that he needed to submit his application for adjustment of status (I-485) and submit a copy of the petition for an alien relative (I-130) that his daughter had submitted on his behalf. (*Id*. at ¶ 12.) The hearing was continued to allow him to do so. (*Id*.) Petitioner submitted the documentation, but was advised at his hearing the following month that he had used the wrong form, so he had to resubmit a correct application. (*Id*. at ¶ 13.) The Department of Homeland Security ("DHS") attorney present at the hearing sent notice of the paperwork to U.S. Citizen and Immigration Services ("USCIS") requesting that the adjudication of Petitioner's daughter's petition be expedited. (*Id*. at ¶ 14.)

Three weeks later, Petitioner again appeared before an Immigration Judge who advised him how to complete the waiver of inadmissibility. (*Id*. at ¶ 15.) The hearing was continued to the following month so that Petitioner could do so and so his daughter could submit an affidavit of support on his behalf. (*Id*.) In June, Petitioner appeared with all his completed paperwork and the

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

2

1   Immigration Judge scheduled his individual hearing on his application for adjustment of status and
2   waiver of inadmissibility for August. (*Id*. at ¶ 16.) On August 22, Petitioner appeared with
3   counsel for the first time who orally requested to terminate proceedings. (*Id*. at ¶ 17.) The
4   Immigration Judge continued the hearing until October 25 to allow Petitioner's counsel to file a
5   written motion to terminate and for Petitioner to complete the required medical exam. (*Id*.)

A week later, Petitioner filed the underlying habeas petition seeking an order requiring ICE to release him from custody or an order requiring the Immigration Judge to hold a detention hearing. (Dkt. No. 1.) The following day, the Court ordered Respondents to file a response to the habeas petition by September 19. One week before the response was due—on September 11—Petitioner filed a motion for a temporary restraining order seeking the same relief set forth in the underlying petition. (Dkt. No. 10.) The Court directed Respondents to file a response by September 18 and set a hearing for September 20.

**DISCUSSION**

Petitioner contends that his continued detention without a custody determination violates his Fifth Amendment due process rights and his Eighth Amendment right to bail. Respondents counter that Petitioner has no statutory or constitutional right to a bond hearing, and that the Eighth Amendment does not apply to immigration proceedings. Although the motion for a temporary restraining order seeks the same relief as the underlying habeas petition, at the hearing, the parties requested that the Court rule on the temporary restraining order now, but allow further briefing on the habeas petition.

**A. Legal Standard**

The standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "Under the original *Winter* standard, a party must show 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "Under the 'sliding scale'

3

variant of the *Winter* standard, if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Id*. (internal quotation marks and citation omitted).

**B. Analysis**

### 1) Likelihood of Success

The first factor is success on the merits. *Winter*, 555 U.S. at 20. It is not enough to show a mere "possibility" of success. *Id*. at 22. Rather, there must be a "clear showing" that the plaintiff is entitled to preliminary relief. *Id*. Here, the question is whether Petitioner has shown a likelihood of success on his claim that his continued detention without a hearing is unconstitutional.

#### a) Legal Framework Governing Detention Under § 1226(c)

As a threshold matter, Petitioner concedes that he is subject to mandatory custody pursuant to 8 U.S.C. § 1226(c) because he was detained and charged with removability based on a conviction which qualifies as an aggravated felony. *See* 8 U.S.C. § 1226(c)(1)(B). Under Section 1226(c)(2):

> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.

Section "1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018).

In *Jennings*, the Supreme Court reversed the Ninth Circuit's holding that noncitizens detained under 8 U.S.C. §§ 1225(b)(1), (b)(2), and 1226(c) were entitled to bond hearings every six months. *Jennings*, 138 S. Ct. at 837, 839. *Jennings* rejected the Ninth Circuit's reading of

4

1226(c) as limiting the permissible length of a noncitizen's detention without a bond hearing. *Id*. at 842 (rejecting *Rodriguez v. Robbins*, 804 F.3d 1060, 1079 (9th Cir. 2015)). *Jennings* held that the plain language of 1226(c) was unambiguous and "makes clear that detention of aliens within its scope must continue 'pending a decision on whether the alien is to be removed from the United States.'" *Jennings*, 138 S. Ct. at 846. *Jennings*, however, declined to reach the issue of whether prolonged detention under section 1226(c) is at a certain point unconstitutional. This issue was remanded to the Ninth Circuit which is expected to hear argument in the next few months. *See Rodriguez v. Jennings*, 887 F.3d 954 (9th Cir. 2018).

### b) The Constitutionality of Petitioner's Detention

Petitioner insists that detention generally becomes prolonged at the six-month mark so his detention for more than nine months necessarily violates his due process rights. In support of this argument, Petitioner cites to *Diouf v. Napolitano*, 634 F.3d 1081, 1085 (9th Cir. 2011) (*Diouf II*), as well as several non-immigration cases, none of which persuade the Court of a six-month constitutional bright line. As a threshold matter, *Dioff II* examined detention under Section 1231(a)(6), which governs detention of noncitizens beyond the removal period, e.g., individuals "whose collateral challenge to [a] removal order (a motion to reopen) is pending in the court of appeals, as well as [] aliens who have exhausted all direct and collateral review of their removal orders but who, for one reason or another, have not yet been removed from the United States." *Id*. at 1085. In addition to addressing detention under a different statutory provision, *Dioff II*'s applicability here is questionable given that it was decided before *Jennings*. The non-immigration cases on which Petitioner relies are inapposite because the Supreme Court has consistently "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003).

In *Demore*, the Supreme Court addressed the very statutory provision at issue here and held that a six-month detention under section 1226(c) was not prolonged. The Court noted that detention under 1226(c) was necessarily "brief" because it "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id*. at 513, 530. The Court cited to its "longstanding view that

the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings" in accordance with the "the narrow detention policy reflected in 8 U.S.C. § 1226(c)."[3] *Id*. at 526. In *Jennings*, the Court went even further noting that 1226(c) was "*not* 'silent' as to the length of detention"; rather, "it expressly prohibits release from that detention except for narrow, witness-protection purposes." *Jennings*, 138 S. Ct. at 846 (emphasis in original). Petitioner has thus not show a likelihood of success on his claim that detention under 1226(c) beyond six months without a bond hearing is per se unreasonably prolonged.

Next, Petitioner argues that even if a bond hearing is not required in every case after six months, the Court should apply a reasonableness test and find that a hearing is nonetheless required here. In support of this argument, Petitioner cites to out-of-circuit authority which predates *Jennings*. *See, e.g.*, *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011) (holding that petitioner's 35-month detention under 1226(c) was unreasonable and noting that "the reasonableness determination must take into account a given individual detainee's need for more or less time, as well as the exigencies of a particular case"); *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015) (holding that sometime after the six month point and before the one year point of petitioner's detention "the burdens to [petitioner's] liberties outweighed any justification for using presumptions to detain him without bond to further the goals of the statute"); *Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1217 (11th Cir. 2016), vacated following *Jennings*, 890 F.3d 952 (11th Cir. 2018) (declining to adopt a bright-line rule, but "suggest[ing] that a criminal alien's detention without a bond hearing may often become

---

[3] In doing so, *Demore* declined to extend its prior holding in *Zadvydas*, that six months was a presumptively reasonable period of detention, but that as "the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [must] shrink" to detention under section 1226(c). *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); *Demore*, 538 U.S. at 527. *Demore* noted that *Zadvydas* dealt with a different statutory provision—again, section 1231(a)(6)—which applies to detention for noncitizens "for whom removal was 'no longer practically attainable.'" *Demore*, 538 U.S. at 527 (quoting *Zadvydas*, 533 U.S. at 690). In contrast, 1226(c) "governs detention of deportable criminal aliens pending their removal proceedings." *Demore*, 538 U.S. at 527–28. Likewise, "[w]hile the period of detention at issue in *Zadvydas* was 'indefinite' and 'potentially permanent,' the detention here is of a much shorter duration" because it has a definite ending point—the conclusion of removability proceedings. *Id*. (internal citation omitted); *see also Jennings*, 180 S.Ct. at 846 (noting that 1226(c) was distinguishable from "the statutory provision in *Zadvydas* [because] detention under § 1226(c) has 'a definite termination point': the conclusion of removal proceedings.").

unreasonable by the one-year mark, depending on the facts of the case."); *Ly v. Hansen*, 351 F.3d 263, 273 (6th Cir. 2003) (holding that an 18-month detention under 1226(c) was unreasonable and that detention becomes unreasonable "[w]hen actual removal is not reasonably foreseeable."); *Reid v. Donelan*, 819 F.3d 486, 501 (1st Cir. 2016), cert. denied, 138 S. Ct. 1547 (2018), and opinion withdrawn on reconsideration following *Jennings*, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018) (declining to adopt a bright-line rule that detention longer than six months under 1226(c) was unreasonable and instead, applying an individual reasonableness analysis to conclude that petitioner's 14-month detention was unreasonable.). The Ninth Circuit, however, had employed a bright-line rule that detention beyond six months was presumptively unreasonable—not a reasonableness test—and that bright-line rule was overruled by *Jennings*. *See Rodriguez v. Robbins*, 804 F.3d 1060, 1078 (9th Cir. 2015), rev'd sub nom. *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *see also Sopo*, 825 F.3d at 1214 (discussing the split among the circuits with the Second and the Ninth Circuits adopting a bright-line approach, and the First, Third, and Sixth Circuits taking a case-by-case reasonableness approach).

      At the hearing, Petitioner insisted that *Chavez-Alvarez* was the most closely analogous case. There, the Third Circuit held that "beginning sometime after the six-month timeframe" and "certainly by the time [the petitioner] had been detained for one year, the burdens to [petitioner's] liberties outweighed any justification for using presumptions to detain him without bond to further the goals of the statute." 783 F.3d 469, 478. Following *Jennings*, however, numerous courts have held that *Chavez-Alvarez* is no longer good law, although it provides "persuasive guidance." *See, e.g.*, *Dryden v. Green*, 321 F. Supp. 3d 496, 2018 U.S. Dist. LEXIS 103889, *11 (D.N.J. 2018) ("the Third Circuit's ultimate rulings in *Diop* and *Chavez–Alvarez* have been abrogated by *Jennings*, and those two cases are no longer binding upon this Court" but that "[t]he constitutional reasoning that underlay" the decision "still provides some persuasive guidance to how this Court should address § 1226(c) claims."); *Otis V. v. Green*, No. CV 18-742 (JLL), 2018 WL 3302997, at *7 (D.N.J. July 5, 2018) (same*); Frantz C. v. Shanahan*, No. CV 18-2043 (JLL), 2018 WL 3302998, at *3 (D.N.J. July 5, 2018) (same); *Destine v. Doll*, No. 3:17-CV-1340, 2018 WL 3584695, at *4 (M.D. Pa. July 26, 2018) (same). Those cases that have continued to follow its

reasoning have applied a case-by-case analysis to do so. *See. e.g., Muse v. Sessions, et al*., No. 18-CV-0054 (PJS/LIB), 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018) (granting habeas relief concluding that petitioner's 14-month detention was unreasonable under the facts presented); *Thompson v. Edwards*, No. CV 18-1006 (ES), 2018 WL 4442225, at *4 (D.N.J. Sept. 17, 2018) (granting habeas relief concluding that petitioner's 26-month detention was unreasonable under the facts presented); *Fatule-Roque v. Lowe*, No. 3:17-CV-1981, 2018 WL 3584696, at *6 (M.D. Pa. July 26, 2018) (holding that "[w]hile Petitioner has been detained for fifteen (15) months, the length of his detention can be attributed, in large part, to the multiple motions to reset he submitted before the Immigration Court and to correct an error he made in connection with his I-360 application" and denying habeas relief); *Carlos A. v. Green*, No. CV 18-741 (SDW), 2018 WL 3492150, at *5 (D.N.J. July 20, 2018) (finding that "Petitioner's continued detention [beyond a year] has not become so prolonged that it has become arbitrary and unreasonable, and § 1226(c) is therefore not unconstitutional as applied to Petitioner"). In only two of the post-*Jennings* cases citing *Chavez-Alvarez*, did the courts conclude that the petitioners' detention of less than one year was unreasonably prolonged and both were decided on the facts of those cases. *See Hernandez v. Decker*, 2018 WL 3579108, *8-10 (S.D.N.Y. July 25, 2018) (holding that petitioner's nine-month detention was unreasonable because his immigration detention had exceeded the criminal incarceration underlying his removability from day one (he had only received probation) and the delay in his removal proceedings could not "fairly be attributed to him"); *Sajous v. Decker*, 2018 WL 2357266, *11 (S.D.N.Y. May 23, 2018) (holding that petitioner's detention of more than eight months was unreasonable because the delay in his immigration proceedings was "largely attributable to immigration official's failure[s]" and his detention was over four times longer than the maximum sentence he faced for his underlying offenses).

In the Ninth Circuit, there is a scant case law regarding detention under section 1226(c) following *Jennings*. *See Calmo v. Sessions*, No. C 17-07124 WHA, 2018 WL 2938628, at *3 (N.D. Cal. June 12, 2018) (denying habeas relief because petitioner had already received a constitutionally adequate bond hearing, but "presum[ing] that an individual's prolonged detention of 28 months without a bond hearing would violate the Due Process Clause"); *Arizmendi v. Kelly*,

No. 17-4791-JAT (DMF), 2018 WL 3912279, at *4 (D. Ariz. July 23, 2018), report and recommendation adopted, No. 17-04791-PHX-JAT, 2018 WL 3872228 (D. Ariz. Aug. 15, 2018) (rejecting the petitioner's due process challenge to his eight and a half month detention noting that he "submitted no evidence that the government has improperly or unreasonably delayed the regular course of proceedings, or that the government has detained him for any purpose other than the resolution of his removal proceedings."); *Avalos v. Sessions*, No. 18-cv-02342-HSG, 2018 U.S. Dist. LEXIS 88525, *4-5 (N.D. Cal. May 25, 2018) (concluding that a six and a half month detention under 1226(c) was not unreasonably prolonged).

Under the particular circumstances thus far, Petitioner has not established that his nearly 10-month detention is unreasonably prolonged so as to violate his due process rights. First, his continued detention is finite—his individual hearing is scheduled for October 25, 2018. (Dkt. No. 15 at ¶ 17; Ex. L at 40.) *See Jennings*, 138 S. Ct. at 846 ("detention under § 1226(c) has 'a definite termination point': the conclusion of removal proceedings."). Petitioner's argument that the hearing date does not represent the actual end of his detention because either side is likely to appeal the Immigration Judge's decision which will necessarily prolong his detention relies on speculation. If Petitioner is detained beyond his individual hearing scheduled to occur in less than a month, then he can renew his motion. The Court must decide this motion based on the facts as they now exist and those are that Petitioner will have a hearing in less than a month regarding his applications for relief.

Second, Petitioner has not suggested that the government or the Immigration Judge has acted in bad faith, delayed, or misled Petitioner regarding his removability proceedings. *See Demore*, 538 U.S. at 532–33 (KENNEDY, J., concurring) ("Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons."). To the contrary, the Immigration Judge advised Petitioner regarding the process for applying for re-adjustment of status through his daughter and the need for a waiver of inadmissibility. (Dkt. No. 10-2 at ¶ 3; Dkt. No. 15 at ¶¶ 11-16). Similarly, the DHS attorney requested that USCIS expedite the adjudication of Petitioner's

9

daughter's visa petition because Petitioner was detained in immigration custody. (Dkt. No. 15 at ¶ 14.)

Finally, at least some of the delay in setting Petitioner's hearing was the result of Petitioner's requests for continuances to obtain an attorney and to pursue alternative forms of relief. *See Demore*, 538 U.S. at 531 (noting that petitioner's six month detention was "somewhat longer than average," but that "respondent himself had requested a continuance of his removal hearing."). Petitioner argues that his pursuit of other relief actually cuts the other way—that his multiple good faith defenses to removability weigh against further detention. Petitioner points to his pending motion to terminate, his approved application for adjustment of status with a waiver of admissibility, and the possibility of post-conviction relief for the underlying conviction. (Dkt. No. 10-2 at ¶¶ 3-4, 7.) In *Demore*, the Court considered that the petitioner had not contested his removability under 1226(c) when weighing the reasonableness of continued detention. *Id*. at 522. That is, where a noncitizen "has not asserted any grounds on which his removal may be cancelled, he will presumably be removed from the United States eventually;" however, the weaker or more attenuated removability becomes, the likelihood that the detention is unreasonable increases "because the mandatory detention statute 'is premised upon the alien's presumed deportability and the government's presumed ability to reach the removal decision within a brief period of time.'" *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018) (quoting *Reid*, 819 F.3d at 499-500.). Petitioner, however, has not offered any evidence of how likely it is that any of the forms of relief he is pursuing will actually result in the termination of removal proceedings. Under these circumstances, the Court cannot conclude that his removability is so attenuated as to render his detention under 1226(c)'s mandatory detention scheme unconstitutional at this time under these circumstances.

In sum, given the record here, Petitioner does not establish a likelihood of success on his claim that his detention of nearly 10 months violates his due process rights.

**2) Remaining Factors**

Because Petitioner has not established a likelihood of success on the merits, it is unnecessary to consider the remainder of the *Winter* factors. *See Garcia v. Google, Inc.*, 786 F.3d

10

733, 740 (9th Cir. 2015). Petitioner's motion for a temporary restraining order is denied.

## CONCLUSION

For the reasons stated above, Petitioner's motion for a temporary restraining order is DENIED. Respondent's answer to the habeas petition is due within 10 days. If Petitioner wishes to respond to the answer, he shall do so by filing a traverse with the Court and serving it on Respondent within 10 days of the date the answer is filed. The parties may, however, stipulate to a different schedule, especially as circumstances may materially change following the Petitioner's October 25 hearing.

**IT IS SO ORDERED.**

Dated: October 4, 2018

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

11