UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUVENAL GARCIA GONZALEZ,<br>Petitioner,<br>v.<br>ERIK BONNAR, et al.,<br>Respondents. | Case No.18-cv-05321-JSC<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br>Re: Dkt. No. 1 |

Petitioner Juvenal Garcia Gonzalez is a noncitizen permanent resident from Mexico who is currently in Immigration and Customs Enforcement ("ICE") custody at the Yuba County Jail pending the appeal of an Immigration Judge's removal order and order denying his applications for relief. On August 29, 2018, he filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking an order requiring his release from custody or directing the Respondents to schedule a detention hearing before an Immigration Judge. (Dkt. No. 1.) Two weeks later, Petitioner filed a motion for a temporary restraining order seeking the same relief. (Dkt. No. 10.) Following a hearing, the Court denied the temporary restraining order concluding that Petitioner had failed to show that his detention of nearly 10 months violated his due process rights given his upcoming individual hearing before an Immigration Judge. (Dkt. No. 19.) The parties have since submitted supplemental briefing regarding the underlying habeas petition following his individual hearing.[1] Having considered the supplemental briefs, the Court GRANTS the habeas petition. Petitioner has established that his detention of more than one year with no end in sight violates his due process rights such that he is entitled to an individualized bond hearing.

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 11, 12.)

## BACKGROUND

Petitioner was born in Mexico in 1963 and has lived in the United States since he was a teenager. (Dkt. No. 10-3 at ¶ 3.) In 1991, he adjusted his status to that of a permanent resident. (*Id*.) He has six United States citizen children and eleven United States citizen grandchildren. (*Id*. at ¶ 7.)

In 2016, Petitioner pled guilty to a violation of California Penal Code § 245(a)(2) and was sentenced to three years in prison; although he was released after 15 months due to good behavior. (*Id*. at ¶¶ 5-6; Dkt. No. 27 at 5:10-11, n.2.[2]) Shortly after Petitioner's release, he was picked up by ICE and he has been detained at the Yuba County Jail since December 28, 2017. (Dkt. No. 10-3 at ¶ 2.) His Notice to Appear charges him with removability under INA § 237(a)(2)(A)(iii) based on his conviction of an aggravated felony for which the term of imprisonment was at least one year. (Dkt. No. 10-2 at 7.)

Petitioner appeared before an Immigration Judge for his first hearing in January 2018. (Dkt. No. 10-3 at ¶ 8.) That hearing, and a hearing the following month, were continued at Petitioner's request to allow him to find counsel. (Dkt. No. 15 at ¶¶ 9-10.) In March, Petitioner appeared a third time before an Immigration Judge, admitted the allegations including the charge of removability, but sought to apply for relief from removal in the form of readjustment of status through his daughter. (*Id.* at ¶ 11.) The case was thus continued to allow his daughter to submit a visa petition on his behalf. (*Id*.) The following month, Petitioner again appeared but was advised that he needed to submit his application for adjustment of status (I-485) and submit a copy of the petition for an alien relative (I-130) that his daughter had submitted on his behalf. (*Id*. at ¶ 12.) An ICE officer provided Petitioner with these forms to complete and the hearing was continued to allow him to do so. (Dkt. No. 27-1 at ¶ 7.) Petitioner submitted the documentation, but was advised at his hearing the following month that he had used the wrong form, so he had to resubmit a correct application. (Dkt. No. 15 at ¶ 13.) The Department of Homeland Security ("DHS") attorney present at the hearing sent notice of the paperwork to U.S. Citizen and Immigration

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

2

Services ("USCIS") requesting that the adjudication of Petitioner's daughter's petition be expedited. (*Id*. at ¶ 14.)

Three weeks later, Petitioner again appeared before an Immigration Judge who advised him how to complete the waiver of inadmissibility. (*Id*. at ¶ 15.) The hearing was continued to the following month so that Petitioner could do so and so his daughter could submit an affidavit of support on his behalf. (*Id*.) In June, Petitioner appeared with all his completed paperwork and the Immigration Judge scheduled his individual hearing on his application for adjustment of status and waiver of inadmissibility for August. (*Id*. at ¶ 16.) On August 22, Petitioner appeared with counsel for the first time who orally requested to terminate proceedings. (*Id*. at ¶ 17.) The Immigration Judge continued the hearing until October 25 to allow Petitioner's counsel to file a written motion to terminate and for Petitioner to complete the required medical exam. (*Id*.)

A week later, Petitioner filed the underlying habeas petition seeking an order requiring ICE to release him from custody or requiring the Immigration Judge to hold a detention hearing. (Dkt. No. 1.) The following day, the Court ordered Respondents to file a response to the habeas petition by September 19. One week before the response was due—on September 11—Petitioner filed a motion for a temporary restraining order seeking the same relief set forth in the underlying petition. (Dkt. No. 10.) The Court directed Respondents to file a response and held a hearing on the temporary restraining order. (Dkt. Nos. 14 & 18.) At the hearing, Petitioner requested the opportunity to submit full briefing on the habeas petition regardless of the Court's ruling on the temporary restraining order. On October 4, 2018, the Court denied the motion for a temporary restraining order and set a briefing schedule on the habeas petition. (Dkt. No. 19.)

A little over a week later, the Immigration Judge denied Petitioner's motion to terminate in a summary order. (Dkt. No. 27-1 at ¶ 9.) Petitioner's individual hearing was then reset for November 6, 2018 because his case was assigned to a different Immigration Judge. (*Id.* at ¶ 10.) At the hearing, the Immigration Judge denied Petitioner's application for adjustment of status and waiver of admissibility and ordered Petitioner removed to Mexico. (*Id*. at ¶ 11; Dkt. No. 25-2 at 2.) On November 27, 2018, Petitioner filed a notice of appeal to the Board of Immigration Appeals. (Dkt. No. 27-1 at ¶ 12.)

Given the postpostment of Petitioner's individual hearing, the Court granted two stipulations extending the briefing schedule for the underlying habeas petition. (Dkt. Nos. 21, 23.) The petition is now fully briefed. (Dkt. Nos. 24, 27.)

**JURISDICTION**

A district court may grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003).

**DISCUSSION**

The question underlying Petitioner's habeas petition is the same that was presented by Petitioner's motion for a temporary restraining order; namely, whether his continued detention without a custody determination violates his Fifth Amendment due process rights and his Eighth Amendment right to bail. The Court's prior Order denying Petitioner's motion for a temporary restraining order discussed the legal framework governing detention under 8 U.S.C. § 1226(c) at length and the Court incorporates that discussion by reference. (Dkt. No. 18.)

**A. Petitioner's Prolonged Detention Violates Due Process**

Although Petitioner continues to insist on a bright-line rule that detention beyond 6-months is constitutionally impermissible, the Supreme Court's decision in *Jennings* establishes there is no such bright-line rule. *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018) (holding that Section "1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes."). As the Court previously noted, the few cases that have considered detention under Section 1226(c) post-*Jennings* have concluded that the decision depends on the individual circumstances of each case.

Since the Court's prior Order, two things have changed. First, Petitioner has been detained for an additional three months. Second, Petitioner's removability is both more certain and more foreseeable. There remains, however, a dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 1226(c) becomes unconstitutional.

Although the Ninth Circuit decided *Rodriguez v. Marin*, 909 F.3d 252, 257 (9th Cir. 2018), following remand from the Supreme Court, it did not resolve the constitutional question, and instead, remanded the case to the district court to decide this and the related issues in the first instance. The most that can be gleaned from the decision is a continued skepticism regarding indefinite decision: "We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Id*. at 256.

Petitioner argues that given his appeal, his detention at this point is guaranteed to reach 15-17 months.[3] District courts—outside of the Ninth Circuit—grappling with the question of detention in 1226(c) cases continue draw the line in these cases based on the individual facts of the case with some finding detention beyond the 16-month mark unconstitutional, *see, e.g.*, *Alexis v. Sessions*, No. CV 18-1923, 2018 WL 5921017, at *8 (S.D. Tex. Nov. 13, 2018) (granting habeas in part because petitioner's detention could last at least another year given his pending appeal with the Board of Immigration Appeal and likely appeal of any adverse order to the Fifth Circuit Court of Appeals to the Supreme Court), while others have reached the opposite conclusion, *see, e.g.*, *Sigal v. Searls*, No. 1:18-CV-00389 EAW, 2018 WL 5831326, at *7 (W.D.N.Y. Nov. 7, 2018) (denying habeas in part because the length of detention was due at least in part to the petitioner's decision to seek a stay of removal rather than accept removal to the Ukraine).[4]

In general, "[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Muse v. Sessions*, No. 18-CV-0054 (PJS/LIB), 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018) (collecting cases re: the same); *see also Portillo v. Hott*, 322 F. Supp. 3d 698, 708 (E.D. Va. 2018) (holding that while "the factors are

---

[3] This estimate appears consistent with that provided by the government. (Dkt. No. 24 at 14:3-10 (stating that the BIA has a case processing goal of 90 days from the completion of briefing, and for in-custody cases, parties are provided 21 days to file simultaneous briefs).
[4] In *Rodriguez v. Nielsen*, No. 18-4187 TSH, 2019 U.S. Dist. LEXIS 4228, *17-18 (N.D. Cal. Jan. 7, 2019), the court took a different approach and concluded that detention becomes unconstitutionally prolonged at the six-month mark. The court accordingly granted petitioner's habeas petition because he had been detained for 440 days without an individualized bond hearing.

almost evenly split between the two parties when weighing [petitioner's] due process liberty interest against the government's legitimate, nonpunitive interest in ensuring that he can be successfully deported if his application for withholding of removal is denied" the length of petitioner's detention (14 months) tipped the balance in the petitioner's favor).

The Court previously concluded that Petitioner had not established that his nearly 10-month detention was unreasonably prolonged so as to violate his due process rights because: (1) his individual hearing was scheduled for the following month and if Petitioner's applications for relief were granted, he would be released; (2) Petitioner had not suggested that the government or the Immigration Judge has acted in bad faith, delayed, or misled Petitioner regarding his removability proceedings; and (3) at least some of the delay in setting Petitioner's hearing was the result of Petitioner's requests for continuances to obtain an attorney and to pursue alternative forms of relief. With the denial of Petitioner's motion to terminate and his applications for relief, the nature of Petitioner's detention—which the Court noted at the forefront is both more certain (his applications for relief have been denied) and more foreseeable (Petitioner's detention will last at least another 3-5 months)—has likewise changed. Before his individual hearing in front of the Immigration Judge there was a possibility that Petitioner would be granted relief and released within a month. This possibility no longer exists.

Petitioner thus urges the Court to find that the following facts weigh in favor of a finding that his detention is now unreasonably prolonged: (1) his detention will reach or exceed a year by the time the Court rules on his petition; (2) his appeal of the Immigration Judge's order guarantees that his detention will exceed several more months—likely lasting 15-17 months; (3) he has raised several good faith challenges to his removal order; (4) any delays are attributable to both parties; and (5) his time in immigration detention will likely exceed the time he served for his underlying criminal conviction (15 months). The government counters that Petitioner's additional month and a half of detention does not make his detention unreasonable and that the Court cannot consider the prospect of future detention, but instead, must make its decision based on whether Petitioner's detention at this time is unreasonable. The government also insists that it has acted diligently with respect to Petitioner's removal proceedings and any delay is Petitioner's fault.

As a threshold matter, the Court disagrees with the government's position that the Court cannot consider the possible duration of Petitioner's detention. While the Court previously declined to consider the possible length of his detention should his applications for relief be denied at his individual hearing, the procedural circumstances have now changed. Petitioner's applications to terminate and for relief have been denied and he has filed an appeal—which by the government's own estimate guarantees that his detention will last *at least* another three months. The government's suggestion that Petitioner's choice to appeal these adverse rulings weighs against any constitutional claim that he may make regarding his detention during the course of the appeal is untenable. The government cites no authority for the proposition that a petitioner who pursues his available legal remedies must forego any challenge to the reasonableness of his detention in the interim and the Court is unaware of any. Other courts considering similar arguments have rejected the notion that "the Due Process Clause imposes no limitation on the length of § 1226(c) detention when the government has not engaged in dilatory tactics." *Muse*, 2018 WL 4466052, at *3 (noting that the government's position "was difficult to square with the Supreme Court's reasoning in *Demore*."); *see also Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011) (rejecting the notion that an individual who has already had a removal hearing has a lesser liberty interest "because regardless of the stage of the proceedings, the same important interest is at stake—freedom from prolonged detention…Although at the margin [petitioner's] liberty interest may be slightly less than that of someone subject to only an initial finding of removal, fundamentally the same interest in freedom from prolonged detention is at stake.").

In *Demore,* the Supreme Court held that mandatory detention under § 1226(c) was not per se unconstitutional: "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings." *Demore v. Kim*, 538 U.S. 510, 513 (2003). *Demore*, however, focused on the brevity of the detention and concluded that because "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases" there was no due process issue. *Id*. at 530. In

contrast to the situation at the time *Demore* was decided, case processing times today are considerably longer. *See Rodriguez v. Nielsen*, No. 18-4187 TSH, 2019 U.S. Dist. LEXIS 4228, *16 (N.D. Cal. Jan. 7, 2019) (describing a General Accounting Office survey finding that as of 2015 the median time for the BIA to complete an appeal of a removal order was 450 days); *see also Portillo v. Hott*, 322 F. Supp. 3d 698, 705 n.5 (E.D. Va. 2018) (noting that the statistics cited by *Demore* were likely inaccurate as the government has since clarified that in 2001 "the total average time to completion in cases where the alien appealed was 382 days (approximately thirteen months, rather than five months)").

The Court thus concludes, as have nearly all the other courts to consider this issue, that the starting point of the analysis is the length of detention—both how long the petitioner has been detained and how long the detention is likely to last. *See, e.g.*, *Alexis v. Sessions*, No. CV H-18-1923, 2018 WL 5921017, at *7 (S.D. Tex. Nov. 13, 2018) ("A court must consider the length of detention to date, the likely duration of future detention, the conditions of detention, whether the detainee's civil confinement exceeds the incarceration for his conviction, and whether the detainee or the government prolonged the detention."); *Muse*, 2018 WL 4466052, at *5 (considering the length of detention and how long the detention is likely to continue in the absence of judicial relief); *Portillo*, 322 F. Supp. 3d at 708 (holding that petitioner's "fourteen-month detention weighs heavily in his favor as a prolonged and substantial burden on his liberty interest" and "[t]his finding is enhanced by the potential for significant additional proceedings, which the parties conservatively estimated at oral argument will take at least six additional months"); *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018) (considering the length of the detention to date and likely duration of continued detention). Here, Petitioner's detention has lasted just over a year and will last at least 15-17 months in total,[5] which is four times the "brief" detention approved in *Demore*. As such, the length of Petitioner's detention supports his due process claim.

---

[5] The Court takes judicial notice that Petitioner's detention will likely last even longer due to the partial government shutdown that occurred after briefing on this Petition. It has been widely reported that because of the shutdown thousands of immigration hearings have been cancelled and the immigration backlog has grown significantly.

8

As for the remaining factors, these too weigh in Petitioner's favor.  First, Petitioner has identified several good faith challenges to the Immigration Judge's orders which he raised in his notice of appeal to the Board of Immigration Appeals. (Dkt. No. 27-1 at ¶¶ 13-15.)  *See Sajous*, 2018 WL 2357266, at *11 (noting that where a noncitizen "has not asserted any grounds on which his removal may be cancelled, he will presumably be removed from the United States eventually," but "the weaker or more attenuated removability becomes, the likelihood that the detention is unreasonable increases"); *see also Demore*, 538 U.S. at 522 (finding that it was relevant that the petitioner did not contest removability).  Second, the nature of Petitioner's detention—whether he is being detained in immigration custody or in a penal institution—also weighs in his favor as he has been detained at Yuba County Jail since his arrest in December 2017.  (Dkt. No. 10-3 at ¶ 2.) *See Muse*, 2018 WL 4466052, at *5 ("courts consider the conditions of the alien's detention [because] [a]liens held under § 1226(c) are subject to civil detention rather than criminal incarceration.").  Third, Petitioner's civil detention will meet or exceed his detention on the underlying criminal offense, which weighs in his favor.  *See Portillo*, 322 F. Supp. 3d at 708 (comparing the duration of detention in ICE custody to the length of time served on the criminal sentence).  Finally, while the Court previously concluded that Petitioner was responsible for at least some of the delays in the proceedings, Petitioner has now offered evidence suggesting that the government was also responsible for some the delay; namely, providing Petitioner the wrong I-495 application form and for further delaying Petitioner's individual hearing after his case was assigned to yet another Immigration Judge.  (Dkt. No. 27-1 at ¶¶ 7, 10.)  Accordingly, this factor is at best neutral.

Most of the factors thus weigh in Petitioner's favor with the most important—the length of Petitioner's detention—weighing strongly in his favor.  Petitioner's detention has exceeded the "brief" period of detention authorized in *Demore* and by the government's own admission will exceed the length of detention which numerous courts have found violates a petitioner's due process rights.  Under these circumstances, Petitioner's prolonged detention without an individual bond hearing violates his due process rights.

**B. Eighth Amendment Claim**

Petitioner's argument that his detention also violates the Eighth Amendment is unavailing. "[D]eportation proceedings are civil, rather than criminal, in nature." *Agyeman v. INS*, 296 F.3d 871, 886 (9th Cir. 2002) (citing *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984)). Petitioner is thus not entitled to habeas relief on the ground that his immigration detention violates the Eighth Amendment's prohibition against cruel and unusual punishment. *See Slim v. Nielson*, No. 18-CV-02816-DMR, 2018 WL 4110551, at *7 (N.D. Cal. Aug. 29, 2018); *Calmo v. Sessions*, No. C 17-07124 WHA, 2018 WL 2938628, at *5 (N.D. Cal. June 12, 2018). Accordingly, Petitioner's Eighth Amendment claim is denied.

### C. Procedural Requirements of Petitioner's Bond Hearing

In *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), the Ninth Circuit held that due process requires that those facing prolonged immigration detention be provided certain procedural protections in detention proceedings; namely, that the government bear the burden of proving by clear and convincing evidence that the individual is a flight risk or a danger to the community. The government insists that *Jennings* overruled *Singh*. In particular, the government points to language in *Jennings* criticizing the Court of Appeals' requirement that the government "provide procedural protections that go well beyond the initial bond hearing established by existing regulations—namely, periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary" because there was nothing in the text of section 1226(a) which "even remotely supports the imposition of either of those requirements." *Jennings*, 138 S. Ct. at 847–48.

However, numerous courts post-*Jennings* have rejected the government's suggestion that *Jennings* reversed appellate court decisions placing the burden on the government to justify prolonged detention by clear and convincing evidence. *See, e.g.*, *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1146-47 (N.D. Cal. 2018), appeal dismissed, No. 18-15976, 2018 WL 4173027 (9th Cir. July 25, 2018) ("declin[ing]to find that *Jennings* reversed the clear and convincing evidence standard announced in *Singh* or later Ninth Circuit cases relying on *Singh's* reasoning"); *Hechavarria v. Sessions*, No. 15-CV-1058, 2018 WL 5776421, at *1, *9 (W.D.N.Y. Nov. 2, 2018) (holding that the petitioner's "continued detention violates the Due Process Clause unless the

10

government demonstrates by clear and convincing evidence before a neutral decisionmaker that it is necessary to serve a compelling regulatory purpose"); *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *11 (S.D.N.Y. July 25, 2018) ("the Court is unpersuaded that *Jennings* has any bearing on the appropriate procedures consistent with due process."); *Portillo,* 2018 WL 3237898, at *8 n.9 (holding that *Jennings* is inapposite to this question, as a court "must determine what protections are demanded by the Constitution, not what protections are authorized by the statute."); *Sajous*, 2018 WL 2357266, at *7, *12 (finding that the government bears the burden by clear and convincing evidence and that the Second Circuit's decision in *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), remained persuasive authority following *Jennings*). These cases persuasively reason that *Jennings*' focus was on whether these procedural protections were statutorily required and not whether they are *constitutionally* required. "[W]hile the Supreme Court has held that § 1226(a) does not mandate that a clear and convincing evidence burden be placed on the government in bond hearings, it left open the question of whether the Due Process Clause does." *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 690 (D. Mass. 2018). It has long been the rule in this and other circuits that because immigration detention is civil rather than criminal in nature, as in other instances of civil confinement, the burden is on the government to justify detention by clear and convincing evidence. *Singh*, 638 F.3d at 1204 ("We are not persuaded by the government's argument that we should deviate from this principle and apply the lower preponderance of the evidence standard because the liberty interest at stake here is less than for people subject to an initial finding of removal or other types of civil commitment….The Supreme Court, however, repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty."); *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015) ("[W]e also hold that the detainee must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community."), *cert. granted, judgement vacated on other grounds*, ––– U.S. –––, 138 S.Ct. 1260, 200 L.Ed.2d 415 (2018).

The rationale of the other courts who have considered this issue is persuasive, and, in particular, *Cortez*, 318 F. Supp. 3d at 1146-47 ("The [*Jennings*] Court did not engage in any

11

discussion of the specific evidentiary standard applicable to bond hearings, and there is no indication that the Court was reversing the Ninth Circuit as to that particular issue"). Notably, nearly all the courts that have granted habeas petitions in 1226(c) cases post-*Jennings* have held that the government bears the burden of proof by clear and convincing evidence. *See Hechavarria*, 2018 WL 5776421, at *8 (collecting cases). The only cases the Court could find that did not do so either placed the burden on the government to establish that detention was required "to the satisfaction of the Immigration Judge," *see Pensamiento*, 315 F. Supp. 3d at 690, or deferred the question of the burden of proof to the Immigration Judge in the first instance, *see Muse*, 2018 WL 4466052, at *6. The government has not cited any authority in support of its contrary position, and instead, rests its argument on the language of *Jennings* while ignoring the numerous decisions which have distinguished that language from the question currently before the Court.

Finally, even if this Court had questions regarding *Singh's* continued viability in light of *Jennings*—which it does not—it could only decline to follow *Singh* if its holding was "clearly irreconcilable" with *Jennings*. *See United States v. Robertson*, 875 F.3d 1281, 1291 (9th Cir. 2017). Under the "clearly irreconcilable" standard, "[i]t is not enough for there to be some tension between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to cast doubt on the prior circuit precedent." *Id*. (internal citation and quotation marks omitted). Rather, "the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003). The Court cannot conclude that *Singh* is clearly irreconcilable with *Jennings*.

Accordingly, Petitioner is entitled to an individual bond hearing at which the government bears the burden of proof by clear and convincing evidence.

## CONCLUSION

For the reasons stated above, the Court GRANTS Petitioner's habeas corpus petition under 28 U.S.C. § 2241. Within 21 days of the date of this order, Petitioner must be provided with a bond hearing before an immigration judge. At that hearing, the government must establish by clear

12

and convincing evidence that Petitioner is a flight risk or a danger to the community in order to continue his detention.

**IT IS SO ORDERED.**

Dated: January 25, 2019

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge